The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned reject the determinative findings of the Deputy Commissioner at this time and reject the ultimate Conclusions of Law on the causation issue as premature at this time. Therefore, the May 18, 1992 Opinion and Award is VACATED.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction over the subject matter of this case, and the parties are properly before the Industrial Commission.
2. At all times pertinent hereto, there was an employee-employer relationship between plaintiff and defendant.
3. Zurich-American Insurance Group was the insurance carrier on the risk prior to January 1, 1988; and Vigilant Insurance Company (Chubb Group) was the insurance carrier on the risk after January 1, 1988.
4. During any period that plaintiff was out of work, she received her full salary.
5. Plaintiff was employed by the defendant from March 19, 1986 through April 14, 1989.
* * * * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned find as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 49 years old, with a date of birth of 25 June 1942. Plaintiff had completed high school and had completed college courses for nursing. Plaintiff was licensed as a registered nurse. Since 1973, plaintiff had worked as an occupational health nurse for various employers.
2. Plaintiff began working for defendant in March, 1986, when the plant first opened. The plant manufactured components for computers, and the parts had to be cleaned with several chemicals. During the first month of her employment, there was a large spill of chemicals in the basement of the plant. Plaintiff participated in the clean-up of the spill. During the clean-up, plaintiff wore protective clothing, but did not wear a respirator. The clean-up lasted approximately three hours and took place in a basement area, without ventilation, where plaintiff was standing ankle deep in the spilled liquid. When the clean-up was completed, plaintiff had a sore throat and was hoarse. Plaintiff also kept smelling vinegar. These symptoms continued for approximately 24 hours.
3. For the next three years, plaintiff continued to participate in the clean-up of chemical spills. During these clean-ups, plaintiff wore protective clothing, but she did not wear a respirator. One or two of the spills were fairly large, but most involved a spill of beaker-sized amounts of chemicals. Plaintiff experienced physical symptoms only once, when an egg-like odor caused her to feel nauseous. The frequency of the spills decreased during her employment, but continued sporadically until she left.
4. In February 1989, three years after beginning employment with defendant-employer, plaintiff discovered she had bladder cancer (transitional cell carcinoma of the urinary bladder). Since that time, up until the date of the initial hearing, plaintiff has had five surgeries to remove tumors of the bladder. The tumors recur about every six months; and surgeries were performed in February of 1989, August of 1989, April of 1990, December of 1990, and November of 1991.
5. Plaintiff bases her claim, in part, on the opinions of Dr. Raymond Joyner, her treating physician, who is a licensed urologist. Dr. Joyner expressed the opinion that he "suspected" an exposure to chemicals at work could have contributed to the development of plaintiff's bladder cancer.
6. Dr. Joyner noted that chemicals of any sort are known to potentate bladder cancer, and that while some chemicals are obvious and particularly hazardous to the bladder, it is less clear cut with many other chemicals. According to plaintiff, who was defendant-employer's occupational nurse, she was exposed to nitric acid, acetic acid, and hydrofluoric acid. Dr. Joyner noted that two of these chemicals are in what is called the extremely potent acid groups. As plaintiff had been required to wade through some fair amount of liquid during the clean-up procedures on some occasions, and had had an upper respiratory tract irritation therein, Dr. Joyner related the exposure through the urinary tract. Dr. Joyner explained that what is felt to happen in a lot of cases with bladder cancer is that what is inhaled is not in itself toxic. However, it can combine with other chemicals in the bloodstream, and what is finally excreted from the body can be a more toxic chemical than when entered the body. He noted that this theory is the topic of frequent investigation in cancer research today. While Dr. Joyner could state it was "possible" that chemical exposure was a cause, he could not say with certainty that chemical exposure was a cause, and he could not say that the chemical exposure was more likely than not the cause of the development of plaintiff's bladder cancer. As Dr. Joyner explained: "[Given this individual's genetic predisposition, and we know this about all cancers, we know that that explains why some people go through the same exposure and develop cancer whereas their neighbor does not. I think this individual obviously developed bladder cancer and she has an exposure that, to say the very least, is highly suspicious, and I think it possibly contributed."
Finally, Dr. Joyner gave the opinion that plaintiff's prior urinary tract infections and kidney stores had no causal relationship in plaintiff's case to her subsequently diagnosed bladder cancer. He did, however, note that the most recent literature on bladder cancer does address that people who work in the chemical industry have a higher incidence of bladder cancer than others. Cigarette smoking by plaintiff is just considered a risk factor. It should again be noted that Dr. Joyner's expertise is in the field of urology, and he has no particular training or expertise in the field of occupational hazards, chemical exposure, or cancer causes.
Plaintiff, in addition, bases her claim, in part, on statistical information such as the fact that she developed bladder cancer at an earlier age than is customary. Before one can conclude from statistics that plaintiff's bladder cancer was caused by conditions of the workplace, one must assume the possibility that chemical exposure could cause the cancer.
7. In the record as it now exists, there is the deposition of Dr. Patil, who is from Solon, Ohio, and specializes in occupational medicine and preventive medicine. He has reviewed the medical records of plaintiff. Dr. Patil felt plaintiff's recurrent transitional cell carcinoma of the bladder was not related to the workplace and justified his opinion with the following reasoning:
a. He felt chemicals used in defendants' plant are not known to cause bladder cancer.
b. He felt plaintiff has other risk factors such as smoking and chronic bladder infections which had occurred between the years of 1962 and 1973.
and c. He noted that bladder cancer is the most frequent malignant tumor of the urinary tract with an estimated 37,000 new case per years.
As is obvious from the above findings of fact, neither of the expert witnesses questioned with regard to plaintiff's claim was an expert in the field of cancer treatment or cancer causes. The undersigned are of the opinion that further expert review is needed to properly dispose of this case in a way that is fair and just to all parties and to obtain a clearer and more precise picture of the cause of plaintiff's condition. The undersigned are in need of additional evidence in the way of expert testimony in order to determine whether sufficient legal causation exists to find plaintiff's condition compensable and to thus be able to award medical compensation.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact the undersigned make the following
CONCLUSIONS OF LAW
1. While it appears to the undersigned that plaintiff's bladder cancer may have been caused by her work-related exposure to chemicals, the undersigned, in their discretion, have determined that additional evidence in the way of proper and specialized expert testimony is needed in order to sufficiently address the issue of causation.
The Industrial Commission will exercise its discretion, pursuant to N.C.G.S. 97-89, at this time and will appoint a physician for independent medical examination.
* * * * * * * * * * * * * *
The foregoing findings of fact and conclusions of law engender the following
ORDER
1. Plaintiff is HEREBY ORDERED to submit herself for an independent medical examination to be conducted by Dr. Cary N. Robertson, M.D., a Staff Urologist at Duke University Medical Center in Durham, North Carolina. This appointment of a disinterested and duly qualified physician is made pursuant to N.C.G.S. 97-89 and accordingly, as prescribed by statute, defendants shall pay the cost of such examination. Defendant shall also forward advance travel expenses to the plaintiff prior to the scheduled examination date.
In accordance with Duke University Medical Center's policy as to workers' compensation patients, defendant Zurich-American Insurance Group shall forward all of plaintiff's medical records as now exist as part of the official record of this case to Joanne Johnson, P.O. Box 3133, Duke PDC, Durham, North Carolina 27710. Defendants shall request that Ms. Johnson forward these records to Dr. Robertson for review. Once reviewed, Dr. Robertson's office will call and set up an appointment with plaintiff. The Industrial Commission shall be notified by the plaintiff at that time as to the date, time, and place of the appointment.
2. Any difficulties concerning this examination should be reported immediately to the Industrial Commission's Full Commission.
3. Once the examination has been made, the medical report should be sent by Dr. Robertson to the Industrial Commission, Chairman J. Howard Bunn, Jr., 430 N. Salisbury Street, Raleigh, North Carolina 27606, along with a bill for the examination, so that a final determination of the matter may be made as soon as possible to conclude this matter.
Defendants shall bear the costs.
This the __________ day of ________________________, 1994.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________________ JAMES J. BOOKER COMMISSIONER
S/ ________________________ ROGER DILLARD DEPUTY COMMISSIONER
JHB/nwm 01/13/94